IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT FRANKLIN, | : | CIVIL ACTION NO. 1:23-CV-1091 |
| Plaintiff | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| | : | |
| LESLIE HICKS, | : | **PROPOSED AMENDED COMPLAINT** |
| Defendant | : | **WITH JURY DEMAND** |

FILED
HARRISBURG, PA
APR 05 2024
PER _____
DEPUTY CLERK

### Inroduction

This is a civil rights action filed by Vincent Franklin, a state prisoner, for damages under 42 U.S.C. § 1983, alleging a denial of equal protection under the Fourteenth Amendment to the United States Constitution.

### Jusridiction

1. This action is being brought under the Civil Rights Act, 42 U.S.C. § 1983 which provides a cause of action for the deprivation of any rights, privileges, or immunites secured by the Constitution and the law of the United States. Plaintiff must show the alleged deprivation was committed by a person under the color of law.

2. This Honorable Court has jurisdicition over these federal claims pursuant to 28 U.S.C. § 1331 and 1343.

3. Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391 because the events giving rise to this complaint occured with the territorial jurisdiction of this District and the Defendant is subject to personal jurisdiction within this District.

### Parties

4. Plaintiff Vincent Franklin is currently incarcerated at the State Correctional Institution at Huntingdon (SCI-Huntingdon), located at 1100 Pike Street, Huntingdon, PA 16654.

5. Defendant Leslie Hicks, SCI-Huntingdon's Corrections Employment and Vocational

Coordinator was employed by SCI-Huntingdon, located at 1100 Pike Street, Huntingdon, PA 16654; at the relevant times.

### Exhaustion of Available Remedies

6. Plaintiff has exhausted all available remedies in accordance with Department of Corrections Policy ADM-804.

### Facts

7. At the relevant time to this complaint, [December 15, 2020 through the present], Plaintiff has been incarcerated at SCI-Huntingdon, located at 1100 Pike Street, Huntingdon, PA 16654.

8. On December 15, 2020, Plaintiff received an emergency transfer from the State Correctional Institution at Dallas (SCI-Dallas), to the State Correctional Institution at Huntingdon (SCI-Huntingdon), as a result of a state of emergency. The mass transfers were ordered by John Wetzel, in an effort to help mitigate the spread of COVID-19; during the pandemic.

9. While authorizing these emergency transfers throughout the State of Pennsylvania, John Wetzel also authorized, in his 2020 fireside chat, that inmates will be compensated during the pandemic.

10. Over the course of several months, plaintiff received notification that inmates who were similarly situated as he was, who were transferred in the fall/winter of 2020, who tested negative for COVID-19, during the height of the pandemic, received the compensation in the above-mentioned paragraph.

11. On or about the summer of 2022, plaintiff spoke to other similarly situated inmates, who were transferred from SCI-Smithville to SCI-Huntingdon, just (1) week after plaintiff, as a result of the state of emergency; which advised plaintiff that the compensation discussed by John Wetzel was afforded to them.

12. Plaintiff alleges that his 14th Amendment Rights to Equal Protection were violated, in that he received disparate treatment from other similarly situated inmates who were mass transferred in the fall/winter of 2020, at the height of the pandemic, as he was denied the compensation guaranteed by Secretary Wetzel; while other similarly situated inmates received the compensation. Plaintiff alleges that he was similarly situated with other inmates who were transferred from SCI-Smithville to SCI-Huntingdon, and alleges that the treatment received from

defendant Hicks was the result of intentional and purposeful discrimination, and there was no rational basis for the treatment; and that this treatment bears no rational relationship to any penelogical interst. Plaintiff's allegation that he was similarly situated describes the type of arbitrary, irrational, and individuously discriminatory behavior necessary for an equal protection claim.

## Claims for Relief
## Denial of Equal Protection Under the 14th Amendment; Based on a "Class of One" Theory

13. The purpose of the Equal Protection Clause of the 14th Amendment is to secure every persons within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents. **Village of Willowbrook v. Olech, 528 U.S. 563, 564 (2000)(quoting Sioux City Bridge Co. v. Dakota County, 260 U.IS. 441, 445 (1923)).**

14. To state an equal protection claim based on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."

15. An equal protection claim based on a "class of one" theory can be asserted by alleging that he was intentionally treated differently from other similarly situated inmates and there was no rational basis for the treatment. **See Phillips v.Cnty. of Alleheney, 515 F.3d 224, 243 (3d Cir. 2008).**

16. Persons are similarly situated for purposes of an equal protection claim when "they are alike in all relevant apsects." **See Startzell v. City of Philadelphia, 533 F.3d 183, 203 (3d Cir. 2008).**

17. Plaintiff avers that he and other similarly situated inmates, who were state prisoners, that were mass transferred throughout the State of Pennsylvania, in the fall/winter of 2020, as a result of the pandemic; were similarly situated in all aspects, and those inmates who were transferred throughout the State of Pennsylvania received the inmate compensation guaranteed by John Wetzel.

18. Plaintiff avers that he and other similarly situated inmates who were transferred from SCI-

3

Smithville were also similarly situated. Plaintiff and other similaryly situated inmates from SCI-Smithville were state prisoners; plaintiff and other similarly inmates were transferred to SCI-Huntingdon in the fall/winter of 2020. Plaintiff alleges that he and other similarly situated inmates from SCI-Smithville were gainfully employed prior to their transfers, and didn't receive any DC-141's, [inmate write ups]; which would void the compensation guaranteed by John Wetzel. As a result of the aforementioned, only those inmates from SCI-Smithville received the compensation guaranteed by John Wetzel; while plaintiff denied the compensation guaranteed by John Wetzel.

19. Plaintiff alleges that he was treated differently from similarly situated inmates who were part of the mass transfer in the fall/winter of 2020, as they did receive the compensation, at the receiving facilities; as a resullt of John Wetzel's 2020 fireside chat.

20. Plaintiff alleges that he was treated differently from similarly situated inmates transferred during the pandemic, like plaintiff, by defendant Hicks, as SCI-Smithville inmates did receive the compensation authorized by John Wetzel. **Id. Phillips at 243**.

21. Plaintiff alleges that he suffered intentional disctimination, as inmates from SCI-Smithville were afforded the compensation guaranteed by JohnWetzel; which should have been equally applied to plaintiff. Hicks had first hand knowledge of the compensation afforded by John Wetzel, and should have applied this compensation to plaintiff also. **Id. Phillips at 243**.

22. Other similarly situated inmates transferred throughout the State of Pennsylvania, during the fall/winter of 2020, received the compensation at their receiving facilities.

23. Other similarly situated inmates who were tranferred from SCI-Smithville to SCI-Huntingdon continued to receive compensation; while plaitiff, for no rational basis or any penelogical interest was denied this compensation.

24. Hicks arbitrarily and intentionally deprived plaintiff of the compensation afforded by John Wetzel; while affording other similarly inmates that compensation.

25. To state a claim under a class of one theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment. **See Phillips at 243**.

26. The Equal Protection Clause of the United States Constitution is found at Section 1 of the Fourteenth Amendment and provides: All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United states and of the state wherin they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. **U.S.Const.Amend. XIV § 1, cl. 4.; City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985)(citing Pyler v. Doe, 457 U.S. 202, 216 (1982)).**

27. The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of statute or by its improper execution through duly constitutd agents. **Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Williams v. Morton, 343 F.3d 212, 221 (3d Cir 2003).**

28. Where a plaintiff alleges that he alone has been intentionally treated differently from others similarly situated and ther is no rational basis for the difference in treatment, he may raise a "class on one" equal protection claim. **Engquist v. Oregon Dep't of Agric., 553 U.S. 591, 598 (2008).** To maintiain such a claim, a plaintiff must establish that he has been irrationally singled out for disparate treatment. **Id.**

29. A Court reveiwing a complaint must accept as true all allegations of material fact and consture them in the light most favorable to the plaintiff; or the rule that a court must constue pro se pleadings liberally.

## Equal Protection Claim Based On A "Class of One" Theory

*1. Plaintiff alleges that defendant Hicks treated him differently from other "similarly situated" inmates, and states the following:* Plaintiff alleges that he and "similarly situtated" inmates were prisoners within the State of Pennsylvania, during the height of the pandemic;

which prompted the governor to declare a state of emergency. Plaintiff alleges that he and other "similarly situated" inmates who tested negative for the COVID-19 virus were mass transferred throughout the State of Pennsylvania; through the directive of the former Secretary for the Department of Corrections, John Wetzel, on or about December of 2020, in an effort to help mitigate the spread of the virus. Plaintiff alleges that he and other "similarly situated" inmates were transferred to SCI-Huntingdon, on or about the fall/winter of 2020. Plaintiff alleges that he and other "similarly situated" inmates, prior to their transfers never received any institutional infractions, which would forfeit the compensation guaranteed by John Wetzel in his 2020 fireside chat video. SCI-Smithville inmates received the compensation authorized by John Wetzel; however, this same compensation guaranteed by John Wetzel wasn't applied equally to plaintiff, albeit he was "similarly situated" due to the pandemic. Plaintiff alleges that he was intentionally treated differently from other "similarly situated" inmates from SCI-Smithville. Plaintiff alleges that he was intentionally singled out for adverse treatment, and that any differential treatment was irrational and wholly arbitrary. **See Phillips at 243.**

**2. *Plaintiff alleges that defendant Hicks did so intentionally, and states the following:*** Plaintiff alleges that request to staff member Leslie Hicks, generated by other "similarly situated" inmates from SCI-Smithville, afforded them the compensation authorized by Secretary Wetzel. John Wetzel announced in his 2020 fireside chat video, inmates will receive compensation during the pandemic; subsequently plaintiff was arbitrarily denied the compensation authorized by John Wetzel; which should have been equally applied. Defendant Hicks had first hand knowledge of the employment compensation, and should have afforded this compensation to plaintiff during the pandemic; as he was "similarly situated" with those inmates from SCI-Smithville. An investigation was done, regarding the compensation authorized by John Wetzel; but only those

"similarly situated" inmates from SCI-Smithville were afforded the compensation. **See Phillips at 243; See also Doc 23, filed on 11/27/2023. Brief In Support of Amended Complaint-- Exhibits 1 and 2. [Declerations by "similarly situated" inmates from SCI-Smithville].**

**3. *Plaintiff alleges that there was no rational basis for the difference in treatment, and states the following:*** Plaintiff alleges that other "similarly situated" inmates transferred from SCI-Smithville to SCI-Huntingdon received the compensation authorized by John Wetzel, in his 2020 fireside chat video; while plaintiff, for no rational basis or any penelogical interest was denied the compensation authorized by John Wetzel, during the pandemic. Defendant Hicks arbitrarily and intentionally deprived plaintiff of this compensation; albeit being "similarly situated". As a result of depriving plaintiff the compensation authorized by former Secretary Wetzel, and affording other "similarly situated" inmates from SCI-Smithville the same compensation, defendant Hicks, under the color of law, violated plaintiff's 14th Amendment Constitutional Right to Equal Protection. Hicks acted willfully, deliberately, maliciously, and with reckless disregard for plaintiff's Equal Protection Rights. Plaintiff asserts that he was intentionally singled out for adverse treatment wholly divorced of any legitimate governmental concern. **See Willowbrook at 565.** Any differential treatment was irrational and wholly arbitrary. Plaintiff asserts that the discrimination incurred by defendant Hicks was purposeful, and intentional; rather than incidental.

## Defendant Hicks Eleventh Amendment Claim to Dismiss Plaintiffs Complaint

1. Plaintiff alleges that he committed a typing error, and maintains that he only meant to sue defendant Hicks in her ***individual capacity***; not her official capacity. Plaintiff only meant to sue defendant Hicks in her ***individaul capacity***; under the color of law. **See Brandon v. Holt, 469**

7

U.S. 464, 472-73; Own v. City of Independence, 445 U.S. 622, 637-38 (1980).

2. The Eleventh Amendment bars suit against state officials sued in their official capacities, because the state is the real property interest in as much as plaintiff seeks recovery from the State Treasury. See **Kentuchy v. Graham, 473 U.S. 159, 167 n. 14 (1985); see also Melo v Hafer, 912 F.2d 628, 635 (3d Cir. 1990).**

3. To get damages from state officials, you must name the defendant in their individual or personal capacities. **Melo at 625.** In determining whether plaintiff sued Hicks in her personal capacity, official capacity, or both, courts first look to the complaints and the "course of the proceedings." **Graham, at 167 n. 14 (quoting Brandon at 469); see also Gregory v. Chehi, 843 F.2d 111, 119 (3d Cir. 1988).**

4. Plaintiff's *amended complaint*, <u>Doc 21</u> sought to sue defendant's Hicks, in her official capacity. **Id. at ¶ 35.** This was a clerical error on plaintiff's part, as he was rushing while typing his amended complaint; as his time on the word processor was expiring.

5. The "course of the proceeding," i.e., plaintiff's amended complaint, **Doc 21 ¶ 35**, sued Hicks in her official capacity, and only requested *compensatory* and *punitive damages*. **See Doc 21 ¶¶ 36-37.** Again, while plaintiff was drafting his amended complaint, he committed a clerical error. Monetary damages against state officals can only be awarded; while suing in his/her individual capacity.

6. Plaintiff requests that this Honorable Court consider the fact that plaintiff only requested damages from defendant Hicks, and not the State. **Melo at 636.**

7. As the Third Circuit has stated in **Melo**, plaintiff should be able to amend his complaint to resolve any ambiguity after he originally asseted in the District Court that he sued Hicks, the official, in her individual capacity. **Id.**

8

8. The Third Circuit has resolved doubts about "*capacity*" in which defendant's were sued in favor of the plaintiff, and assumed he sued them in their personal capacities, where the plaintiff sought punitive damages. **See Gregory at 119-20 (3d Cir. 1998)**(noting that punitive damages cannot be recovered from a defendant in his official capacity). Normaly, how tenuous the claims the court should not dismiss plaintiff's complaint with prejudice when a plaintiff is proceeding pro se.

9. In essence plaintiff only meant to sue Hicks in her individual capacity, under the color of law; as he didn't request any injunctive relief. **See Brandon, 469 U.S. 464, 472-73 (1985); Own v. City of Independence, 445 U.S. 622, 637-38 (1980).**

10. A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official capacity actions for prospective relief are not treated as actions against the State. **Will v. Michigan Dept. of State Police, 109 S. Ct. 2304, 2311 n. 10 (1989)(quoting Graham, 473 U.S. at 167 n. 14).** To establish personal liability under section 1983 "it is enough to show that the official, Leslie Hicks, acting under the color of law, caused the deprivation of a federal right."

## Conclusion

While <u>**Doc 21 ¶¶ 9-10**</u>, in plaintiff's amended complaint, mentions work assignment, defendant Hicks is confusing work assignment with compensation; in order to dismiss plaintiff's suit. The compensation authorized by Secretary Wetzel was applied to an inmates work assignment; if he was *unable to work*. To remove any ambiguity in plaintiff's complaint, Secretary Wetzel authorized compensation for those who had work assignments. Plaintiff's amended complaint mentions nothing of being removed from a work assignment and stripped of pay. **Id.** ¶ 11 speaks of the compensation authorized by Wetzel. **Id.** ¶ 12 speaks of defendant

Hicks overriding Secretary Wetzel, and placing plaintiff in the General Labor Pool (GLP).

If you had a work assignment, and *you were unable to work*, due to the pandemic, the compensation authorized by John Wetzel would apply to you. If you had a work assignment, and *you were able to work*, you continued in your work assignment. (i.e. CI Shops, Kitchen Detail, Laundry, Block Details). While Secretary Wetzel authorized this compensation, you had to have been previously employed in a work assignment. As long as plaintiff didn't receive any institutional infractions, prior to his transfer to SCI-Huntingdon, the compensation authorized by Wetzel should have been equally applied to him; during the pandemic. [Plaintiff's previous work assignment was a teacher's aide; where he was gainfully employed for 6 years]

To add clarification to **Doc 21 ¶ 9**, the request to staff was only to advise defendant Hicks that he didn't receive the compensation authorized by John Wetzel; as I was unable to work upon my transfer to SCI-Huntingdon. Upon my transfer to SCI-Huntingdon, the school building was shut down, due to social distancing, and homework was being delivered on the blocks; so plaintiff was unable to work, and should have been afforded the compensation authorized by Secretary Wetzel, in his 2020 fireside chat video.

As a result of defendant Hicks depriving plaintiff the compensation authorized by Secretary Wetzel in his 2020 fireside chat video, and affording other "similarly situated" inmates from SCI-Smithville the same compensation, defendant Hicks, under the color of law, deprived plaintiff in violation of his constitutional rights under the Fourteenth Amendment. Compounding this problem is the fact that an ivestigation was done, on or about December of 2020, for those inmates who were "similarly situated" from SCI-Smithville, and Hicks subsequently afforded them the compensation authorized by Secretary Wetzel. Plaintiff sent a request slip to Hicks on or about February of 2021, and advised her that she hadn't applied the compensation afforded by

Secretary Wetzel to his account.

Hicks acted willfully, deliberately, maliciously, and with reckless disregard for plaintiff's Equal Protection Rights. Plaintiff alleges the he was intentionally singled out for adverse treatement wholly divorced of any legitimate governmental concern. **See Willowbrook at 565.** Any differential treatment was irrational and wholly arbitrary. Plaintiff alleges that the discrimination incurred by Hicks was purposeful, and intentional; rather than incidental.

The court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, that the plaintiff may be entitled to relief. **See Phillips at 233 (3d Cir. 2009)(quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002)).** In addition to reviewing the facts contained in the complaint, matters of public record, and undisputedly authentic documents if the complaint's claims are based upon these documents. **Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)(citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1182, 1196 (3d Cir. 1993)).**

Plaintiff requests that this Honorable court consider **Doc 23**, filed on 11/27/2023. *Exhibit 1 and 2 are declerations of two "similarly situated" inmates from SCI-Smithville, who after an investigation was done, afforded these men the compensation authorized by Secretary Wetzel.* Plaintiff also request this Honorable Court to consider John Wetzel's 2020 fireside chat video; which authorized the compensation that he alleges.

### Relief Requested

WHEREFORE, plaintiff seeks judgment in his favor against Hicks, in her *individual* capacity, along with any/all other relief permitted by law. Plaintiff requests the jury to award monetary damages to plaintiff.

Dated: 3/29/24                              Respectfully submitted,

*Vincent Franklin*
Vincent Franklin GG6242
SCI-Huntingdon
1100 Pike Street
Huntingdon, PA 16654