UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VINCENT FRANKLIN, | : | |
| Plaintiff | : | CIV. ACTION NO. 1:23-CV-1091 |
| v. | : | (JUDGE MANNION) |
| L. HICKS, | : | |
| Defendant | : | |

**MEMORANDUM**

Presently before the court in this prisoner civil rights case is defendant's motions for summary judgment. For the reasons set forth below, the motion will be granted.

**I.    PROCEDURAL HISTORY**

Plaintiff, Vincent Franklin, filed this case on June 29, 2023, asserting generally that he was wrongfully deprived of his prison job at the Huntingdon State Correctional Institution ("SCI-Huntingdon") and the corresponding compensation during the early days of the COVID-19 pandemic. (Doc. 1). The case was initially assigned to United States District Judge Christopher C. Conner. On July 5, 2023, Judge Conner dismissed all defendants other than defendant Hicks. (Doc. 7). The case is presently proceeding on plaintiff's second amended complaint, which was filed on April 5, 2024. (Doc. 38). Hicks answered the second amended complaint on May 28, 2024. (Doc.

45). The case was reassigned to the undersigned on January 21, 2025, following Judge Conner's retirement from the court.

On January 30, 2025, Hicks moved for summary judgment. (Doc. 48). In response, Franklin argued that additional discovery was needed before the summary judgment motion could be adjudicated. (Doc. 56). The court granted Franklin's motion for additional discovery on July 8, 2025, reopened discovery until August 31, 2025, and denied Hicks's motion for summary judgment without prejudice to her right to refile the motion after the close of discovery. (Doc. 57). After the renewed discovery deadline passed, the court set a dispositive motions deadline of October 31, 2025. (Doc. 59). Hicks filed the instant motion for summary judgment on October 7, 2025, along with a supporting brief and a statement of material facts. (Docs. 60-62). Franklin filed an opposition brief and a response to the statement of material facts on October 31, 2025. (Docs. 65-66). Hicks has not filed a reply brief, and the deadline for doing so has expired under the Local Rules. The motion for summary judgment is accordingly ripe for review.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 254 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party can discharge that burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could

find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23; *Jakimas v. Hoffman-La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## III. MATERIAL FACTS[1]

Franklin was incarcerated in SCI-Huntingdon at all relevant times, beginning on December 5, 2020. (Doc. 61 ¶5; Doc. 65 ¶5). Franklin asserts that after he was transferred to SCI-Huntingdon, Hicks deprived him of employment compensation that John Wetzel, the then-secretary of the DOC, had purportedly authorized for all inmates during the COVID-19 pandemic. (Doc. 61 ¶¶6-7; Doc. 65 ¶¶6-7). Franklin asserts that inmates who were transferred to SCI-Huntingdon from SCI-Smithfield shortly after he was transferred to SCI-Huntingdon were given the promised employment compensation, while he was not. (Doc. 61 ¶8; Doc. 65 ¶8). Franklin's transfer to SCI-Huntingdon was an administrative transfer from SCI-Dallas for the purpose of reducing the population of SCI-Dallas. (Doc. 61 ¶¶16-20; Doc. 65 ¶¶16-20).

---

[1] Local Rule 56.1 requires a motion for summary judgment to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" and requires that the party opposing a motion for summary judgment file a statement responding to the numbered paragraphs in the movant's statement of material facts, which "shall include references to the parts of the record" that support the nonmovant's opposition to the motion. M.D. Pa. L.R. 56.1. The facts in this section are derived from the parties' Rule 56.1 statements. (See Docs. 61, 65).

Throughout the COVID-19 pandemic, Wetzel issued several COVID-19 update emails to DOC staff. (Doc. 61 ¶21; Doc. 65 ¶21). In one such email, sent on March 13, 2020, Wetzel provided guidance to DOC staff on inmate compensation during the pandemic. (Doc. 61 ¶24; Doc. 65 ¶24). The email authorized continued compensation for inmates at their regular rate of pay, for their normal work hours, if their employment positions were temporarily suspended due to COVID-19 precautions, if they were quarantined as a COVID-19 precaution, or if they were students who were not permitted to attend classes due COVID-19 precautions. (Doc. 61 ¶25; Doc. 65 ¶25). Inmates who were administratively transferred were not included on the list of inmates who would continue to receive employment compensation. (Doc. 61 ¶26; Doc. 65 ¶26; Doc. 61-5 at 2).[2]

In the absence of contrary guidance from the secretary, employment compensation for transferred inmates is ordinarily governed by DC-ADM

---

[2] Franklin disputes this contention and cites a December 20, 2020, email from Wetzel to all DOC inmates that states "If you have employment, but are unable to participate due to COVID precautions, you will continue to be compensated. (Doc. 65 ¶26; 65-1 at 2). This does not create a dispute of fact as to the contents of Wetzel's March 13, 2020, email. Whether it creates an issue of fact on the ultimate issue of whether Franklin was entitled to compensation is addressed in the discussion section below.

816. (Doc. 61 ¶¶27-28; Doc. 65 ¶¶27-28).[3] DC-ADM 816 states that when an inmate is transferred, he is processed for a job at the new facility and is compensated in accordance with the new job, with no guarantee that he will be given the same compensation he was given at his previous institution. (Doc. 61 ¶¶29-30; Doc. 65 ¶¶29-30).

When Franklin arrived at SCI-Huntingdon on December 5, 2020, he was placed in the general labor pool and given the compensation that corresponded to that position of $0.72 per day. (Doc. 61 ¶31; Doc. 65 ¶31). He remained in the general labor pool until June 8, 2022, when he was given a food work service assignment. Doc. 61 ¶32; Doc. 65 ¶32). Franklin and other inmates arriving at SCI-Huntingdon were classified as administrative transfers and placed in the general labor pool. (Doc. 61 ¶¶33-34; Doc. 65 ¶¶33-34).[4]

At the end of December 2020, SCI-Smithfield was classified as the single point of entry for all parole violators and new intakes across the DOC system, which resulted in nearly all inmates in SCI-Smithfield being

---

[3] The parties dispute whether DC-ADM 816 governed Franklin's compensation in this specific case in light of Wetzel's emails, but there is no dispute that DC-ADM 816 is the relevant policy.

[4] Franklin notes that he does not have knowledge of how other inmates were classified, but does not otherwise dispute the factual basis for Hicks's contention. (Doc. 65 ¶¶33-34).

7

transferred to other institutions. (Doc. 61 ¶35; Doc. 65 ¶35). On February 4, 2021, Wetzel sent an email to DOC staff providing guidance for compensation for inmates transferred from SCI-Smithfield. (Doc. 61 ¶37; Doc. 65 ¶37). The email stated that the inmates transferred from SCI-Smithfield were to maintain their previous rate of pay at their new institutions. (Doc. 61 ¶38; Doc. 65 ¶38). Staff at other prisons were also directed to attempt to place those inmates in their previous employment positions, but there was no guarantee this would occur. (Doc. 61 ¶39; Doc. 65 ¶39).

No inmates who were administratively transferred to SCI-Huntingdon during the COVID-19 pandemic was given their previous rate of pay. (Doc. 61 ¶40; Doc. 65 ¶40).[5] Institutional staff are required to follow DOC policies and guidance from the secretary and are not authorized to circumvent those policies and guidance. (Doc. 61 ¶¶41-42; Doc. 65 ¶¶41-42).[6]

---

[5] Franklin disputes this contention, but only on the basis that he does not have personal knowledge of what other inmates were paid. (Doc. 65 ¶40). He does not offer any contrary evidence to dispute the contention. (*Id.*)

[6] Franklin asserts that Hicks circumvented the relevant guidance from Wetzel in this case, but he does not dispute the contention that as a matter of policy she does not have the authority to do so. (*See* Doc. 65 ¶¶41-42). Whether there is a question of fact on Hicks's compliance with Wetzel's guidance is addressed in the discussion section below.

8

## IV. DISCUSSION

Plaintiff's claims are filed pursuant to 42 U.S.C. §1983. Section 1983 authorizes redress for violations of constitutional rights and provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. §1983. Thus, to establish a successful claim under Section 1983, a plaintiff must demonstrate that the challenged conduct was committed by a person acting under color of state law and deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Lake v. Arnold*, 112 F.3d 682, 689 (3d Cir. 1997). By its terms, Section 1983 does not create a substantive right, but merely provides a method for vindicating federal rights conferred by the United States Constitution and the federal statutes that it describes. *Baker v. McCollan*, 443 U.S. 137 (1979).

In this case, Franklin alleges that Hicks violated his right to equal protection under a "class-of-one" theory. (Doc. 38). To succeed on such a claim, he must show that he was treated differently from other similarly

9

situated individuals and that there was no rational basis for the different treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Franklin asserts that the inmates who were transferred from SCI-Smithfield to SCI-Huntingdon during the pandemic were similarly situated to him and that Hicks treated him differently from those inmates for no rational reason. (Doc. 38 at 2-3).

Hicks argues that she is entitled to summary judgment because Franklin was not similarly situated to the inmates transferred from SCI-Smithfield. (Doc. 62 at 5-6). Hicks notes that Franklin was administratively transferred to SCI-Huntingdon while the inmates from SCI-Smithfield were transferred to SCI-Huntingdon after the prison was reclassified as the single point of entry for all parole violators and new intakes during the pandemic, and that guidance from Wetzel indicated that the SCI-Smithfield inmates were to receive the same rate of pay at their new institution. (Doc. 62 at 6). Franklin argues that he was similarly situated to the SCI-Smithfield inmates because they were all administratively transferred to SCI-Huntingdon and that he should therefore have been given his same rate of pay in the same manner that the SCI-Smithfield inmates were. (Doc. 66 at 6).

The court concludes that Hicks is entitled to summary judgment. Franklin's argument is based on the assertion that he and the inmates

transferred from SCI-Smithfield were similarly situated, but the record demonstrates that this is not true. Franklin was subject to an ordinary administrative transfer to SCI-Huntingdon, while the inmates from SCI-Smithfield were transferred as part of a depopulation of that prison to permit it to act as the single entry point for all parole violators and new intakes. (*See* Doc. 61 ¶¶33-37; Doc. 65 ¶¶33-37). Email guidance from Wetzel specifically directed institutional staff to give the inmates transferred from SCI-Smithfield the same rate of pay they had been given prior to the transfer. (Doc. 61-7).

Franklin asserts that a December 10, 2020, email from Wetzel to all inmates required institutional staff to maintain Franklin's compensation. (Doc. 66 at 3). In the email, Wetzel stated, "If you have employment, but are unable to participate due to COVID precautions, you will continue to be compensated." (Doc. 66-4 at 1). Franklin also provides several declarations from other inmates stating that Wetzel made a similar promise that "if you are currently employed, and are unable to work, you will continue to be

compensated until further notice" during a "fireside chat video" produced in 2020.[7] (*Se* Doc. 66-3).

Franklin's reliance on Wetzel's assurance is misplaced because it presupposes that Franklin "ha[d] employment" or was "currently employed" at the time of his transfer to SCI-Huntingdon. Nothing in Wetzel's guidance, however, indicated that it was superseding the DOC's ordinary policies on administrative transfers set out in DC-ADM 816. (*See id.*) Similarly, Wetzel's March 13, 2020, email authorized continued compensation for inmates whose positions were temporarily suspended, inmates who were quarantined, or inmates unable to attend classes due to COVID-19 precautions, but did not include any language indicating that it was changing the policies governing compensation for inmates who were administratively transferred. (Doc. 61 ¶25; Doc. 65 ¶25).

Given the silence from Wetzel's emails regarding administrative transfers, job placement and compensation for inmates who were administratively transferred continued to be governed by DC-ADM 816. That

---

[7] The parties appear to agree that no original copies of the video exist after additional discovery was conducted on this basis. The court assumes that the declarations from other inmates accurately represent what was said in the video for the purpose of viewing the evidence in the light most favorable to Franklin as the non-moving party.

policy specifically provides that an administratively transferred inmate will be processed for a job at his new institution and is not guaranteed the same rate of pay at his new institution. (Doc. 61 ¶¶29-30; Doc. 65 ¶¶29-30; Doc. 61-6 at 3). Thus, at the time of his transfer, Franklin was not employed such that he would be covered by Wetzel's COVID-19 guidance; rather, he was waiting to be processed for a new job at his new institution. Hicks therefore had a rational basis for denying Franklin the same rate of pay at SCI-Huntingdon while giving the same rate of pay to SCI-Smithfield inmates because DOC policy specifically required such differential treatment.[8]

Franklin also argues that he should have been given the same pay rate because he was temporarily suspended from his job at SCI-Dallas prior to his transfer to SCI-Huntingdon as a COVID-19 precaution and Wetzel's guidance stipulated that inmates in that situation would be paid the same rate. (Doc. 66 at 1-2). This argument is unavailing. First, the exhibit Franklin attaches to his brief to show that he was suspended does not actually state that fact in any manner. (See Plaintiff's Exhibit 2, Doc. 66-2). Second, even

---

[8] The court does not consider whether the DOC policies treating inmates transferred from SCI-Smithfield differently from inmates transferred from all other institutions could give rise to an equal protection claim because Franklin does not advance such a claim. Frankin only asserts that Hicks's application of the relevant DOC policies and COVID-19 guidance violated his right to equal protection. (See Doc. 38).

if Franklin's job was temporarily suspended as he asserts, this does not alter the fact that he was subsequently transferred to SCI-Huntingdon. As noted above, his employment status after the transfer was governed by DC-ADM 816 rather than Wetzel's COVID-19 guidance and under DC-ADM 816 he was to be processed for a new job at SCI-Huntingdon and was not guaranteed the rate of pay he had been receiving while at SCI-Dallas. Thus, the court concludes that Hicks did not violate Franklin's right to equal protection because the undisputed factual record establishes that she was required to treat inmates transferred from SCI-Smithfield differently from Franklin and all other transferred inmates under the DOC's COVID-19 guidance.

## V.  CONCLUSION

For the foregoing reasons, the court will grant defendant's motion for summary judgment and close this case. An appropriate order shall issue.

*Malachy E. Mannion*
United States District Judge

Dated: 2/4/24
23-1091-01